# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CASE NO. 1:12-cv-00395-GCM

| Ronda Hamby, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court upon Plaintiff Ronda Hamby's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 10.) filed on May 10, 2013, and Defendant Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment, (Doc. No. 11.) filed on July 1, 2013. Plaintiff seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED and, accordingly, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On February 10, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging a disability onset date of September 21, 2010. (Doc. No. 8-9 at 4.) The claim was initially denied on June 9, 2011, and again upon reconsideration on

1

November 10, 2011.  Subsequently, on November 16, 2011, Plaintiff timely filed a request for an administrative hearing and ALJ Marshall D. Riley held a video hearing on March 14, 2012.

On March 20, 2012, the ALJ issued a decision finding that Plaintiff was not disabled at any time from her alleged onset date through the date of the ALJ decision.[1]  (Doc. No. 8-9.)  The Appeals Council denied Plaintiff's request for review on October 17, 2012, rendering the ALJ's decision of March 20, 2012 the final decision of the Commissioner (Doc. No. 8-3 at 5.)  The Parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Thus, this Court "'must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard.'"  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).  This Court does not review a final decision of the Commissioner *de novo*.  *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting *Richardson v. Perales*, 402 U.S. 389, 401

---

[1] Plaintiff's earning record shows that she has acquired sufficient quarters of coverage to remain insured through December 31, 2015.  Thus, in this situation, the relevant time period runs from Plaintiff's alleged onset date through the date of the ALJ decision rather than through her date last insured.

(1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 2005). Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the Commissioner's final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes between September 21, 2010 through the date of the ALJ decision.[2] On March 20, 2012, the ALJ found that Plaintiff was not "disabled" at any time between September 21, 2010 and the date of the ALJ decision. (Doc. No. 8-9.) The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

---

[2] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v).

In this case, the ALJ determined that Plaintiff was not disabled under the third and fifth steps in the above evaluation process. (Doc. No. 8-9 at 8-9.) Particularly, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and Plaintiff did have the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) with some marked limitations. [3]

On appeal, Plaintiff makes the following assignments of error: (1) that the ALJ improperly assessed Plaintiff's RFC, particularly Plaintiff's credibility, and that (2) the ALJ improperly relied on the vocational expert's testimony. (Doc. No. 10-1 at 2.)

1. **Substantial Evidence Supports the ALJ's RFC Determination**

An ALJ is the sole person responsible for assessing a Plaintiff's RFC. 20 C.F.R. § 404.1546(c). In making that assessment, the ALJ must consider the functional limitations resulting from the Plaintiff's medically determinable impairments. SSR, 96-8p, *available at* 1996 WL 374184, at *2. However, it's the Plaintiff's burden to establish her RFC by

---

[3] "Medium work," as defined by 20 CFR 404.1567(c), involves lifting 20-50 pounds occasionally and 10 to 25 pounds frequently.

demonstrating how her impairment or impairments impact her functioning. *See* 20 C.F.R. § 404.1512(c); *see also, e.g., Plummer v. Astrue*, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Maj. J. Mem. & Rec.) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC"), *adopted*, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). In the instant case, substantial evidence supports the ALJ's assessment of Plaintiff's RFC.

To begin, the ALJ states that he gave "great weight" to the opinion of state agency psychologists, particularly the opinion from Dr. Julie Bruno, Psy.D., in November of 2011. (Doc. No. 8-9 at 12, referring to Doc. No. 8-4 at 16-32.) Dr. Bruno stated that Plaintiff's mental limitations restricted Plaintiff to performing simple, routine, repetitive tasks in relatively undemanding and stable work settings that do not require intensive interpersonal relating. (Doc. No. 8-9 at 23, referring to Doc. No. 8-4 at 27-29.) It was entirely proper for the ALJ to give "great weight" to this opinion because state agency psychologists, such as Dr. Bruno, are "highly qualified … experts in the evaluation of the medical issues in disability claims under the Social Security Act." 20 C.F.R. § 404.1527(e)(2)(i); *see also* 20 C.F.R. § 404.1527(c)(4). It was also proper to give "great weight" to Dr. Bruno's opinion because, as the ALJ correctly states, her opinion was "well supported by the documentary evidence." Doc. No. 8-9 at 12; *see* 20 C.F.R. §404.1527(c)(4).

Second, the ALJ correctly states that Plaintiff has never required psychiatric hospitalization, and "[o]ther than brief treatment in 2011, the record fails to document ongoing regular professional mental health treatment." (Doc. No. 8-9 at 11.) Further, at the time Plaintiff applied for benefits, she represented to the Social Security Agency that she had never seen any health care professional for any mental or emotional condition and that she did not have any such

appointments scheduled for the future. (Doc. No. 8-7 at 17.) The full extent of Plaintiff's documented mental health treatment consists of four appointments with a social worker between late May and early July 2011. (Doc. No. 8-8 at 76-90.) While Plaintiff did once go to Urgent Care with a complaint of anxiety, her mental status examination showed that Plaintiff was well developed, well nourished, oriented, had the appropriate mood and affect, and that she denied any suicidal or homicidal ideation. (Doc. No. 8-9 at 7 referring to Doc. No. 8-8 at 63-65.) While Plaintiff's primary care physician at Weaverville Family Medical Associates has prescribed Plaintiff medication for anxiety and depression, treatment notes from both before and after the alleged onset date show that Plaintiff's mental status was reported as "normal." (Doc. No. 8-8 at 9, 11, 12, 17, 30, 54.)

Here, Plaintiff challenges the ALJ's RFC finding on the grounds that he failed to properly consider (1) Dr. Miller's opinion, (2) Dr. Pardoll's opinion, (3) the notes generated by a social worker, (4) a statement made by Plaintiff's husband, and (5) Plaintiff's own credibility.

### a. **The ALJ Properly Considered Dr. Miller's Opinion Regarding Plaintiff's Stress Tolerance**

Plaintiff argues that the ALJ fails to resolve an alleged conflict between the assessed RFC and an opinion by Dr. Jim Miller, Ph.D. who performed a psychological consultative evaluation of Plaintiff in May 2011. (Doc. No. 10-1 at 11-12.) Dr. Miller's opinion stated that Plaintiff's "ability to tolerate the stress and pressure associated with day-to-day work activity is felt to be very poor." (Doc. No. 8-8 at 70.) While Plaintiff is correct that an ALJ is required to consider an opinion provided by a medical source such as Dr. Miller, and in the event of conflict between that opinion and the ALJ's RFC determination, the ALJ must explain why the opinion was not adopted. In the instant case, however, Dr. Miller's opinion and the RFC determination simply were not in conflict. 20 C.F.R. §404.1527(b); SSR 96-8p, *available at* 1996 WL 374184, at *7.

6

First, in determining Plaintiff's RFC, the ALJ gave "great weight" to Dr. Bruno's opinion regarding Plaintiff's limitations, and Dr. Bruno had in turn, given "great weight" to Dr. Miller's opinion that Plaintiff's stress tolerance was "very poor." (Doc. No. 8-4 at 21, 23, 26, 29.) Further, not only does the ALJ discuss Dr. Miller's opinion regarding Plaintiff's poor stress tolerance, but the ALJ expressly states that he "assigns great weight to the opinion of Dr. Miller." (Doc. No. 8-9 at 12.) Perhaps the most telling evidence though is the RFC assessment itself. It is evident from the RFC determination that the ALJ supportably based his RFC determination, in part, upon Dr. Miller's opined limitation concerning Plaintiff's stress tolerance.[4]

### b. Dr. Pardoll's Opinion was Properly Considered by the ALJ

Likewise, the ALJ's assessment of Plaintiff's RFC gave "great weight" to Dr. Bruno's opinion concerning Plaintiff's limitations and Dr. Bruno repeatedly cited Dr. Pardoll's opinion regarding Plaintiff's stress tolerance. (Doc. No. 8-4 at 18, 19, 24.) Further, the ALJ discusses Dr. Pardoll's consultative medical evaluation, including possible limitations, and states Dr. Pardoll's opinion is "assigned partial weight." It's clear that the ALJ has accounted for Dr. Pardoll's opinion in his disability determination. (Doc. No. 8-9 at 12.)

### c. Statement by the Social Worker Was Properly Considered by the ALJ

As repeatedly stated above, the ALJ assigned "great weight" to Dr. Bruno's opinion regarding Plaintiff's limitations. Dr. Bruno references the social worker's notes when

---

[4] The ALJ's RFC determination states that Plaintiff has marked limitations in her ability to carry out detailed instructions and moderate limitation in maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting.

7

formulating her opinion regarding Plaintiff's limitations and thus it is clear that by assigning "great weight" to Dr. Bruno's opinion, the ALJ has properly accounted for the social worker's notes as well. (Doc. No. 8-4 at 19, 23)

### d. ALJ Not Required To Discuss Cumulative Evidence from Plaintiff's Husband

As this Court has held, an ALJ "need not discuss" such cumulative evidence from lay witnesses, such as a Plaintiff's husband. *Grubby v. Astrue*, No. 1:09-cv-364, 2010 WL 5553677, at *6-8 (W.D.N.C. Nov. 18, 2010) (Mag. J. Mem. & Rec.) (citing authority from Seventh, Eighth, and Ninth Circuits concerning lay evidence by claimants' relatives), *adopted by* 2011 WL 52865 (W.D.N.C. Jan. 7, 2011). Plaintiff's husband discussed, among other things, how Plaintiff is unable to sit for very long, does not follow directions well, that she felt anxious, depressed, and agitated. Not only does Plaintiff fail to specify which portion(s) of her husband's statement she regards as significant, but her husband's testimony is merely cumulative of the physician observations and opinions, and as a result her husband's opinion does not need to be discussed by the ALJ.

Further, even if it had been an error not to discuss the statement made by Plaintiff's husband, Plaintiff is unable to sustain her burden of establishing that such error caused her to suffer any prejudice. Thus, omitting the husband's statement would merely be a harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Camp v. Massanari*, No. 01-1924, 2001 WL 1658913 at *1 (4th Cir. Dec. 27, 2001) ("any error on the part of the ALJ was harmless" because Plaintiff "made no showing of prejudice").

### e. **Substantial Evidence Supports the ALJ's Credibility Finding**

The Fourth Circuit has outlined a two-step process for evaluating credibility in *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996), which reflects the current Social Security Rulings and Regulations. *See* 20 C.F.R § 404.1529; SSR 96-7p, *available at* 1996 WL 374186, at *2.

Step one of *Craig* requires an ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by claimant." *Craig*, 76 F.3d at 594. With respect to this first step, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying step one of the credibility determination. (Doc. No. 8-9 at 10.)

Step two of *Craig* requires the ALJ to then evaluate the alleged symptoms' intensity and persistence along with the extent to which those symptoms limit the Plaintiff's ability to engage in work. *Craig*, 76 F.3d at 594; *see also* 20 C.F.R. 404.1529(c); SSR 96-7p, *available at* 1996 WL 374186, at *2. This requires an ALJ to consider (1) a Plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) a Plaintiff's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. *Craig*, 76 F.3d at 595; 20 C.F.R. §416.929(c); SSR 96-7p, *available at* 1996 WL 374186, at *2. Such other relevant evidence includes a Plaintiff's activities of daily living; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects

of medication taken to alleviate pain or symptoms; treatment (other than medication received); and any other measures used to relieve alleged pain and other symptoms. *Id.*[5]

With respect to the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the RFC determination. (Doc. No. 8-9 at 10.) While Plaintiff argues that this finding at the second step is not supported by substantial evidence, there is in fact substantial evidence to support the ALJ's credibility determination.

First, the ALJ correctly states that Plaintiff's daily activities are inconsistent with her statements that her impairments are disabling. (Doc. No. 8-9 at 11.) As the ALJ correct points out, Plaintiff "drives, cares for her daily needs, performs limited household chores, and acts in her own interest." (Doc. No. 8-9 at 11, referring to Doc. No. 8-7 at 43, 59, 62, 63, 64, 72, 82; Doc. No. 8-8 at 67, 91.) Further, Plaintiff also reported that she prepares simple meals, shops for groceries with her husband once a week and otherwise does shop in stores, feeds and plays with her cats, helps clean up after her son, helps her son with his homework, attends church three times a month, visits with her family daily, occasionally talks to friends on the phone, reads, and watches television. (Doc. No. 8-7 at 43, 62, 64, 65, 66, 72, 82, 84, 85; Doc. No. 8-8 at 93.)

The regulations allow this type of evidence to be considered in evaluating Plaintiff's credibility. *See* 20 CFR §§ 404.1529(c)(3), 404.1529(c)(3)(i) (claimant's "daily activities" and "patterns of daily living" are "important indicator[s] of the intensity and persistence of [her] symptoms"); SSR 96-7p, *available at* 1996 WL 374186, at *3, *5, *7 ("daily activities" are material to assessment of claimant's credibility). Moreover, the Fourth Circuit has held that an

---

[5] The regulations do not mandate that the ALJ discuss all of these factors in his decision. *See e.g.*, *Baggett v. Astrue*, No. 08-165, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (noting that the governing authorities require "the ALJ consider these factors, not that he discuss each of them").

10

ALJ is entitled to discount the credibility of complaints by a Plaintiff who is able to engage in the kinds of activities that Plaintiff in the present case performed. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding the finding that claimant's routine activities—including attending church, visiting relatives, reading, watching television, cooking, and feeding pets—were inconsistent with complaints); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("the pattern of [claimant's] daily activity"—including socializing, grocery shopping, cooking, and taking care of personal needs—"suggests that he was not disabled from working").

The ALJ stated that "[t]he overall evidence supports a conclusion that….[Plaintiff's] statements regarding her mental health symptoms and limitations" beyond those that the ALJ included in the RFC are not credible. (Doc. No. 22-23.) As discussed above, substantial evidence supports this statement of credibility.

Second, Plaintiff's main argument against the credibility analysis here appears to be that the ALJ contradicted his step one finding when he stated that "[t]he objective evidence fails to document an impairment or combination of impairments" that cause limitations beyond those reflected in the assessed RFC. (Doc. No. 10-1 at 14-15, quoting Doc. No. 8-9 at 10.) While the ALJ could have stated this a bit more clearly and concisely, there is no contradiction. The ALJ is merely stating that although Plaintiff's impairments could *theoretically* cause the level of symptoms that Plaintiff alleged, substantial evidence indicates that these impairments did not in fact cause the alleged level of symptoms in this case. However, even if there were a contradiction, Plaintiff could not sustain her burden of establishing that it caused her to suffer prejudice. This Court has repeatedly held that the complete absence of a step one finding under *Craig* does not constitute reversible error where—as in the instant case—the ALJ cites substantial evidence in support of his credibility finding. *Pittman v. Massanari*, 141 F. Supp. 2d

601, 610 (W.D.N.C. 2001); *Goodwin v. Halter*, 140 F. Supp. 2d 602, 608 (W.D.N.C. 2001); *Fulbright v. Apfel*, 114 F. Supp. 2d 465, 477-78 (W.D.N.C. 2000).

Lastly, the ALJ also correctly emphasizes that aside from four appointments over a three month period, Plaintiff did not seek "ongoing regular professional mental health treatment," thus creating an inconsistency between Plaintiff's allegations concerning her mental health and the treatment she sought to alleviate that condition. (Doc. No. 8-9 at 11.) This is "highly probative of [Plaintiff's] credibility." *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring). Plaintiff appears to put forth the argument that the ALJ violated SSR 82-59, *available at* 1982 WL 31384, by failing to consider that the reason Plaintiff did not follow certain treatment measures was because she could not afford them. (Doc. No. 10-1 at 15, referring to Doc. No. 8-9 at 11.) However, SSR 82-59 has no bearing upon this case. That ruling applies only when a Plaintiff's failure to follow prescribed treatment is the "tipping point between a finding of disabled versus a finding of not disabled." *MacNeil v. Comm'r of Social Sec. Admin.*, No. 1:10-cv-393-JAW, 2011 WL 4436975, at *5 (D. Me. Sept. 21, 2011) (Mag. J. Mem. & Rec.), *adopted*, 2011 WL 4860080 (Oct. 13, 2011). Here, because the ALJ "did not find that [Plaintiff] would be disabled in the absence of treatment," SSR 82-59 does not apply. *Id.*

**2. Substantial Evidence Supports the VE's Testimony That There Are Jobs That Exist in Significant Numbers in the National Economy that Plaintiff Can Perform**

The ALJ found that based on Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Doc. No. 8-9 at 13.) The ALJ based this finding on the testimony that the Vocational Expert ("VE") provided in response to a question posed by the ALJ concerning a hypothetical

person with the same limitations set forth in the RFC finding ("Hypothetical"). (Doc. No. 8-9 at 13, referring to Doc. No 8-3 at 53-55.) The Fourth Circuit has stated that a hypothetical question is proper when it adequately reflects an RFC finding that is supported by substantial evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). Here, Plaintiff argues that the Hypothetical given was improper, essentially because it incorporated the RFC by reference rather than spelling it out. (Doc. No. 10-1 at 14.) There was no error with regards to this Hypothetical.

At the hearing, the ALJ asked the VE if she was familiar with Dr. Bruno's opinion. (Doc. No. 8-3 at 55, referring to Doc. No. 8-4 at 16-29.) The VE testified that she was familiar with Dr. Bruno's opinion, and when the ALJ posed the Hypothetical to the VE about a hypothetical person who had the limitations set forth in Dr. Bruno's opinion, the VE testified that there were in fact jobs that existed in significant numbers in the national economy that such a person could perform. (Doc. No. 8-3 at 53-55.)

As previously discussed, the ALJ stated in his RFC assessment that he gave "great weight" to Dr. Bruno's opinion; and, indeed, the RFC finding adopts portions of Dr. Bruno's report verbatim. Thus, the Hypothetical sought—and the VE provided in response—testimony concerning jobs available to such hypothetical person with the limitations set forth in the assessed RFC. Under *Johnson*, the ALJ properly relied upon such testimony and the ALJ's reliance upon the VE testimony should be upheld. *See also, e.g.*, *Walker v. Bowen*, 889 F. 2d 47, 50-51 (4th Cir. 1989) (proper VE testimony concerning existence of jobs constitutes substantial evidence in support of ALJ's decision to deny benefits).

Accordingly, even if the Hypothetical were somehow erroneous, Plaintiff cannot sustain her burden of establishing that any such error caused her to suffer any prejudice. *See, e.g., Henley v. Astrue*, No. 3:11-cv-488, 2012 WL 2804846, at *4 (W.D.N.C. July 10, 2012) (assuming that the ALJ erred by posing an improper hypothetical question to the VE, any such error was harmless); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Camp v. Massanari*, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 10.) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 11.) is GRANTED, and the Commissioner's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: May 9, 2014

Graham C. Mullen
United States District Judge

14